UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MALCOM WILLIAMS, surviving Spouse of RADA WILLIAMS<br><br>*Plaintiff,*<br><br>v.<br><br>MAURY REGIONAL HOSPITAL d/b/a MAURY REGIONAL MEDICAL CENTER,<br><br>*Defendant.* | Civil Action No. _____<br><br><br>**JURY DEMAND** |

## AMENDED COMPLAINT

COMES NOW, the Plaintiff, MALCOM WILLIAMS, the surviving spouse of RADA WILLIAMS, who, through undersigned counsel, files this Complaint against Defendant MAURY REGIONAL HOSPITAL d/b/a MAURY REGIONAL MEDICAL CENTER, and in support, states as follows:

### I. PARTIES

1. The Plaintiff, Malcom Williams, is the surviving spouse of Rada Williams ("Mrs. Williams"), who died on April 25, 2024, from complications of a stroke suffered on September 7, 2022 and kidney disease. Malcom Williams is a resident of Lewisburg, Tennessee.

2. Defendant, Maury Regional Hospital d/b/a Maury Regional Medical Center ("Maury Regional" or "Defendant"), is a Tennessee Non-Profit Limited Liability Company and may be

served with process by serving its Administrator/Chief Executive Officer, Martin Chaney, 1224 Trotwood Avenue, Columbia, Tennessee, 38401-4802.

3. At all times material to this Complaint, Defendant Maury Regional was and is a "participating hospital" as defined under 42 U.S.C. § 1395dd(e)(2), subject to the mandates of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, *et seq*.

## II. JURISDICTION AND VENUE

4. Jurisdiction of this Court is based on 28 U.S.C. § 1331.

5. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## III. STATEMENT OF FACTS

6. Upon information and belief, prior to September 7, 2022, Mrs. Williams had been involved in negative interactions with Maury Regional's healthcare providers and staff which resulted in Mrs. Williams being treated as a "difficult patient" by Maury Regional.

7. On September 7, 2022, at some point in the mid-morning, prior to noon, Mrs. Williams arrived at the Maury Regional emergency room, located in Columbia, Tennessee, seeking treatment. Mrs. Williams presented with symptoms of a stroke, including confusion, lethargy, left-sided weakness and slurred speech.

8. Mrs. Williams was escorted to Maury Regional's emergency room by her husband, Mr. Malcom Williams ("Mr. Williams"), who escorted her to the registration desk, put her in a wheelchair, and informed the registration staff that she was confused, having stroke symptoms, left-sided weakness and was very lethargic with slurred speech.

9. Maury Regional's healthcare providers and staff failed to perform a screening examination on Mrs. Williams for an emergency medical condition. Mr. Williams was told to wait in the waiting room with his wife.

10. For several hours, Mr. Williams made repeated inquires to Maury Regional's healthcare providers and staff and communicated that he was afraid his wife was having a stroke; he was ignored.

11. Upon information and belief, Maury Regional failed to perform a screening examination on Mrs. Williams because Maury Regional's healthcare providers and staff had personal prejudice against Mrs. Williams due to previous negative interactions between the healthcare providers and staff and Mrs. Williams.

12. The providers and staff ignored Mr. Williams's repeated requests for aid which only seemed to amplify the avoidance of Mrs. Williams.

13. If Mrs. Williams had been any other patient, Maury Regional's providers and staff would have properly screened Mrs. Williams and recognized she was suffering from an emergency medical condition, i.e., a stroke, which requires immediate emergency medical treatment.

14. After repeatedly being ignored by Maury Regional's providers and staff for several hours, Mr. Williams left the emergency room and drove Mrs. Williams to Marshall Medical Center in Lewisburg, Tennessee, where the couple resides.

15. At 10:35 p.m., Mrs. Williams was triaged at Marshall Medical Center emergency department, assigned a LEVEL II ESI in the medical screening initiated at 10:37 p.m., and was given an MRI which confirmed she had suffered a stroke.

16. Mrs. Williams was then transported back to Maury Regional where she was admitted in the early hours of September 8, 2022, and hospitalized until September 12, 2022.

17. At Maury Regional, the doctors confirmed that Mrs. Williams had suffered a right middle cerebral artery distribution stroke. The American Heart Association and American Stroke Association recommend a Door-to-needle time (the time it takes from when a patient with an acute

ischemic stroke arrives in the emergency department to when treatment begins) of 60 minutes or less. Maury Regional's failure to screen prevented her from getting the "timely" necessary treatment for her ischemic stroke.

18. When Mrs. Williams presented to Maury Regional for the first time on September 7, 2022, with the complaint of changes in mental status and left-sided weakness, she should have been triaged as a high priority and seen urgently.

19. Maury Regional's failure to screen Mrs. Williams in accordance with EMTALA, which would have determined that she was suffering from an emergency medical condition, caused Mrs. Williams to suffer personal harm.

### IV. COUNT 1—VIOLATION OF THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT ("EMTALA") 42 U.S.C. § 1395dd(a)—FAILURE TO SCREEN

20. The allegations previously set forth are incorporated herein by reference.

21. At all times relevant, Defendant Maury Regional was a "participating hospital" under 42 U.S.C. § 1395dd. Thus, the acts or omissions of their healthcare providers and staff members who refused to screen and provide medical treatment to Mrs. Williams are sufficient to impose liability on Defendant for any and all EMTALA violations cognizable under the facts presented.

22. At all times relevant, Mrs. Williams was an individual suffering from an "emergency medical condition," i.e., a right middle cerebral artery distribution stroke, under 42 U.S.C. § 1395dd(e)(1).

23. At all times relevant, Maury Regional had actual knowledge of Mrs. Williams's emergency medical condition because Mr. Williams informed the healthcare providers and staff of her stroke-related symptoms of confusion, lethargy, left-sided weakness and slurred speech, which could also be observed by the healthcare providers doctors and staff.

24. Under EMTALA, 42 U.S.C. § 1395dd(a), Maury Regional had the duty to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists."

25. At all times relevant, Maury Regional failed to provide Mrs. Williams the same level of screening it would have provided to any other patient.

26. Maury Regional failed to provide the same level of screening to Mrs. Williams as it would any other patient because Maury Regional's staff had personal prejudice against Mrs. Williams due to previous negative interactions between the staff and Mrs. Williams.

27. Maury Regional is guilty of violating EMTALA for its failure to provide an appropriate medical screening examination to determine whether or not an emergency medical condition exists as required by 42 U.S.C. § 1395dd(a).

28. Defendant's liability is not grounded upon tort concepts. An EMTALA plaintiff's claim does not rest on any proof that the hospital was negligent; it is predicated on the hospital's violation of a federal statute making the hospital strictly liable for any "personal harm" that "directly results" from that violation. 42 U.S.C. § 1395dd(d)(2)(A).

29. An unannounced Federal Emergency Medical Treatment and Labor Act (EMTALA) survey was conducted at Maury Regional Hospital on 11/14/22 through 11/16/22, specifically for the review of EMTALA requirements. The hospital was found not to be in compliance with the federal regulations at 42 C.F.R 489.20 and C.F.R. 489.24, responsibilities of Medicare participating hospitals in emergency cases.

30. The Centers for Medicare and Medicaid services determine that the standard was not met as evidenced by policy review, document review, medical record review, ambulance trip review, and interview. It was determined that the Maury Regional failed to insure that Rada Williams was provided an appropriate medical screening exam.

31. As a direct result of Defendant's violations of EMTALA and its requirements as alleged above and herein, Mrs. Williams suffered personal harm.

V. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for compensatory damages against Defendant, MAURY REGIONAL HOSPITAL d/b/a MAURY REGIONAL MEDICAL CENTER in the amount of Five Hundred Thousand Dollars ($500,000.00), together with costs herein, punitive damages, and any other such relief as this Court deems just and equitable.

VI. **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury, and designates as the place of trial Columbia, Tennessee.

Respectfully submitted,

/s/*Barbara G. Medley*
Barbara G. Medley, #014103
Law Office of Barbara Medley
111 West Commerce St., Suite 201
Lewisburg, TN 37091
Ph: (931) 359-7555
Fax: (931) 359-7556
bmedley@medleyandspivy.com